# BAYARD

600 N. King Street • Suite 400
P.O. Box 25130 • Wilmington, DE 19899
Zip Code For Deliveries 19801

Writer's Direct Access:
(302) 429-4232
sbrauerman@bayardlaw.com

August 25, 2020

**VIA CM/ECF**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 2325
Wilmington, DE 19801-3555

   Re: *Sequoia Tech., LLC v. Dell, Inc.,* Cons. C.A. No. 18-1127-LPS-CJB

Dear Judge Burke:

  Pursuant to the Court's Oral Order Setting Teleconference to address the parties' discovery dispute in the above referenced matter (D.I. 198), Sequoia Technology, LLC ("Sequoia") outline the discovery dispute issues they are raising:

**Sales and Revenue Information of Accused Products from HPE**

  Sequoia initially sued HPE, Dell, Hitachi, Super Micro and their related entities (collectively, the "initial Defendants") for patent infringement of the '436 Patent. After Red Hat filed a declaratory judgment action against Sequoia, the initial Defendants, including HPE, moved to stay their action pending outcome of the declaratory judgment Red Hat action. (D.I. 43.) During briefing on the motion to stay, Sequoia raised the issue that it will need discovery from the initial Defendants regarding their use of the Accused Products, since Red Hat will be indirectly infringing through their use. HPE and the other initial Defendants stated they would not object to such discovery if a stay were granted. (*See* D.I. 44 at 14-15 ("Moreover, although Sequoia cannot realistically argue that a stay of these suits would substantially hinder its ability to obtain discovery regarding Defendants' use of the accused software, the Defendants do not object to limited, targeted discovery associated with the declaratory-judgment action while the suits against them are stayed.").)

  Sequoia's discovery requests to HPE represent this limited targeted discovery. On March 31, 2020, Sequoia served a limited set of twelve Request for Production of Documents on HPE. (Ex. A.) RFP No. 11 sought "All Documents sufficient to show all sales of the Accused Products, Systems or Services, including the dates of those sales, the purchase prices, and number of units sold" and RFP No. 12 sought "All Documents sufficient to show revenues (net and gross), costs of goods, profit (net and gross), and allocated expenses for all Accused Product, System or Services." *Id.* The parties met and conferred numerous times and HPE has refused to produce any responsive documents to these two requests, objecting on relevance. (*See generally* Exs. B-E.)

  HPE's sales and revenue information are relevant and discoverable for at least two reasons. First, HPE and HPE's end-users are direct infringers. HPE's sales of infringing products counts toward Sequoia's potential damages against Red Hat for its indirect infringement. *See Glenayre*



*Elecs., Inc. v. Jackson*, 443 F.3d 851, 858–59 (Fed. Cir. 2006) ("[D]amages assessed for indirect infringement normally will be the same as damages that would be assessed had the patentee sued and obtained a judgment against the customers . . . Indeed, in most cases damages assessed for indirect infringement will be equal to damages assessed for the underlying direct infringement."); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) ("[T]he quantum of [a Plaintiff]'s recovery . . . depends on what royalty reasonably would have resulted from negotiations where a willing licensor was aware that" downstream users would practice the patent).

Second, the Federal Circuit has repeatedly recognized that the commercial success of an infringing product or method is relevant to demonstrate the non-obviousness (i.e. validity) of the patentee's invention. *Demaco Corp v. F. Von Langsdorff Licensing Ltd*., 851 F.2d 1387, 1391 (Fed Cir. 1988) ("The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight."); *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co*., 730 F.2d 1452, 1461 (Fed Cir. 1984) ("A showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness."). As Sequoia is only seeking the sales and revenue of the Accused Products made, used, sold by HPE, this meets the necessary nexus between the invention and the commercial success of a product embodying the invention. *Bristol-Myers Squibb v. Teva Pharm.*, 923 F.Supp.2d 602, 677 (D. Del. February 11, 2013).

Sequoia served these same limited discovery requests on all initial Defendants, and on IBM, and all have objected on relevance. Sequoia requests that HPE and the initial Defendants, including IBM, be compelled to respond.

**Notice of Inspection/Discovery for a Representative Product**

Sequoia served a Notice of Inspection to Red Hat on April 14, 2020. (Ex. F; *see also* Ex. G [Sequoia's 30b6 deposition notice to Red Hat at Topic 3 dated Jan. 22, 2020].) Red Hat responded with three pages of boilerplate objections. Ex. H. Red Hat's internal IT department uses the steps outlined in the asserted claims of the '436 Patent including dynamically resizing logical volumes. Red Hat, to-date, has refused to provide discovery on its internal use. Red Hat, for example, has not disclosed the quantity of Accused Products used internally, or the frequency at which the resizing commands of its logical volume manager are executed internally. Red Hat also refuses to provide a representative server that would provide discovery on Red Hat's internal use. Such information on specific configurations of servers used internally by Red Hat is not available publicly or in open-source. The system log files in the Accused Products that capture LVM commands can be customized or named specifically or turned-off completely. The dynamic configuration of Red Hat's internal systems provides evidence of specific and customized use of a given software code and relate directly to Sequoia's infringement allegations against Red Hat in this action. *See Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS (PSG), 2011 U.S. Dist. LEXIS 61644, at *3 (N.D. Cal. June 8, 2011) (compelling production of "an internal test tool for inspection by its testifying expert witness").

Sequoia attempted to reach a compromise to forego the notice of inspection by having Red Hat produce documents/files from a server on which a logical volume was created and subsequently resized. (Ex. I.) Red Hat, however, would not agree to the server being a representative product,



which defeats one of the objectives of the inspection to identify a representative server to forego discovery into all Red Hat servers. (*Id*.) Such discovery can be made on a representative basis. If Red Hat continues to refuse to provide a representative server and the total quantity of servers used internally, Sequoia requests discovery on all Red Hat internal servers. Sequoia also requests a 30(b)(6) deponent on Topic 3 related to internal use and testing.

Red Hat should not withhold relevant discovery regarding its own products, especially where it intervened in essence by filing a declaratory judgment action against Sequoia.

**Definition of "Accused Products, System or Service"**

Red Hat has narrowly interpreted the scope of "Accused Products, System or Service" to limit it to just RHEL servers, excluding the use of RHEL in applications and virtual systems. (Ex. E at 3 ("Moreover, what we understand you to be referring to as 'RHEL running on Virtual Machines" is not a separate product—it is simply RHEL.').) Consequently, Red Hat's discovery responses based on its own definition of Accused Products (that exclude other RHEL products) are deficient. Sequoia's Complaint, Infringement Contentions and discovery in this action have identified "Red Hat Enterprise Linux (RHEL) version 4 or later" as infringing Accused Products, System or Service. Sequoia has also supplemented its Accused Products list to provide examples of RHEL systems. These include applications such as OpenShift, Red Hat Virtualization, Red Hat Virtualization Hypervisor, Red Hat Cloud Infrastructure, Red Hat Cloud Access, Satellite, RHEL used in Virtual Machines (for example for VMWare and Microsoft Azure). Red Hat installation and configuration scripts show the use of LVM in these Red Hat Applications and Virtual Settings. Red Hat promotes the use of LVM and dynamic resizing for Snapshots and boom utility. Red Hat creates a thin-pool LVM on these applications and systems that has auto-extend feature to dynamically resize. Red Hat's internal organization shows that Red Hat has split the non-classic use of RHEL into different business units. Red Hat is not providing discovery from such business units. Red Hat is refusing to incorporate these applications, systems and services into accused products, systems or services to provide comprehensive discovery on infringement. The scope of the Accused Products is unchanged, as such. This does not constitute an expansion of scope of the accused products that requires an amended pleading or burdens Red Hat with significant additional resources to conduct discovery. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Though Red Hat included boiler plate objections to Sequoia's definition of "Accused Product, System or Service" in its discovery objections, Sequoia first became aware of Red Hat's narrow interpretation and withholding of this discovery during the 30(b)(6) deposition of Chris Wells on July 1, 2020. Sequoia has diligently met and conferred with Red Hat to resolve this dispute, but to no avail. "[O]ther courts in the Third Circuit have found diligence when a party has sought leave to amend within three months of learning new information, as HSC has done here. *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. CV 13-2033-RGA, 2019 WL 2135858, at *5 (D. Del. May 16, 2019).

**Interrogatory No. 8**

Interrogatory No. 8 seeks discovery into Red Hat's non-privileged communications Red Hat has had with anyone regarding this litigation, the '436 patent, and/or ETRI. On November 30,



2019, Red Hat responded by identifying one communication occurring on October 15, 2019. To date, Red Hat has not supplemented with additional communications. To the extent no further communications have occurred, Red Hat should so state.

**Discovery into Red Hat and IBM Patent Licenses**

Sequoia's RFP Nos. 26 and 27 seek discovery into comparable patent licenses from Red Hat and IBM. Sequoia has defined this to mean "any license agreement that involves the RHEL software." (Ex. K [Fed. 13, 2020 email].) To date, Red Hat has produced documents that only relate to Open Invention Network. The Federal Circuit has consistently held that using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014) ("As we have held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent."); *see also Prism Techs. LLC v. Sprint Spectrum L.P*., 849 F.3d 1360, slip op. at 14 (Fed. Cir. 2017) (stating that it is a "long-accepted proposition that a 'party may use the royalty rate from sufficiently comparable licenses'"); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79 (Fed. Cir. 2012) ("Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace."). Sequoia also seeks all running royalty licenses, regardless of comparable technology, to the extent Red Hat argues that it would not agree to a running royalty license, or would not agree to one for the patent at issue. (Ex. K.)

Red Hat has also not provided a clear answer as to whether it has possession, custody or control over IBM's documents. Here, Red Hat is IBM's wholly-owned subsidiary and a co-defendant. IBM thus has a direct interest in the outcome of this litigation, which militates in favor of finding Red Hat to be in "control" of IBM's documents. *See Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129-132 (D. Del. 1986).

**Deposition Dates**

Red Hat has failed to provide available deposition dates for a number of deposition notices that have been outstanding for months, including Heinz Mauelshagen (served on June 10, 2020) and a 30(b)(6) deponent for numerous deposition topics (served on January 22, 2020, and June 26, 2020).

Respectfully submitted,

*/s/ Stephen B. Brauerman*

Stephen B. Brauerman (No. 4952)

cc: All counsel of record